In their brief filed with the Full Commission defendants moved for a Dismissal of plaintiff's appeal pursuant to Industrial Commission Rule 701(2). After careful consideration, defendants' Motion to Dismiss is DENIED, and the Full Commission shall decide this case based on the merits.
* * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Neill Fuleihan and the briefs and oral arguments before it. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement which is dated 13 August 1993, as:
STIPULATIONS
1. The issues to be determined are as follows:
 (1) Did plaintiff suffer a head or facial disfigurement as a result of the the injury giving rise to this claim?
 (2) Did plaintiff suffer a permanent partial disability as a result of the injury giving rise to this claim?
2. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At such time, an employment relationship existed between plaintiff and defendant-employer.
4. The date of the injury giving rise hereto is 17 February 1992.
5. Plaintiff's average weekly wage on 17 February 1992 was $522.27.
6. Defendants paid plaintiff temporary total disability compensation from 18 February 1992 through 24 March 1992, and temporary partial disability compensation from 27 March 1992 through 3 June 1992.
7. A packet of medical records, collectively marked as Stipulated Exhibit 1, is received into evidence.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, a 37 year old male, has obtained an eleventh grade education, has received formal training as a welder at Anderson Technical College, and attended truck driving school prior to working for defendant-employer.
2. On 17 February 1992, plaintiff was employed as a welder, in which capacity he was required to wear a protective helmet, and as a truck driver by defendant-employer Ward Tank Corporation and had been employed so employed since April of 1990.
3. On 17 February 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer when, while making an off-site delivery of a large steel tank and attempting to unload the tank from defendant-employer's truck, plaintiff was struck on the forehead with a piece of metal pipe, as a result of which he lost consciousness. Plaintiff telephoned defendant-employer's place of business immediately after the incident, and informed defendant-employer that he had sustained a head injury. Thereafter, plaintiff drove the truck back to defendant-employer's principal place of business, and from there was transported by another of defendant's employees to a local hospital emergency room. Plaintiff received thirteen stitches in the left frontal scalp region, was given a prescription for Anaprox, and was released to return to work.
4. On 18 February 1992, plaintiff returned to work for defendant for several hours, after which he ceased working due to symptoms of pain and dizziness associated with the incident of 17 February 1992.
5. Thereafter, plaintiff was seen by Dr. Earl Epps, Dr. Ronald C. Demas and Dr. Joseph Markey, and was treated conservatively for concussion, post traumatic vertigo, head pain and mild internal derangement at the left temporomandibular joint, all related to the incident of 17 February 1992.
6. On 27 February 1992, Dr. Markey released plaintiff to return to work at light duty and restricted him against bending, lifting, rapid changes in position and climbing ladders.
7. Plaintiff returned to work at light duty for defendant-employer from 2 March 1992 through 10 March 1992, during which time he was assigned to work in the tool room, where he was required to issue various tools to defendants' employees. Plaintiff's earnings during the aforementioned period are not reflective of his diminished physical capacity resulting from the 17 February 1992 injury by accident, inasmuch as plaintiff was paid wages equal to or exceeding his wages on 17 February 1992, characterized in the parties' Stipulations as temporary total disability compensation.
8. On 10 March 1992, plaintiff was temporarily sent home for failing to perform light duty work provided to him by defendant-employer. Plaintiff's testimony that he was temporarily sent home due to defendant employer's insistence that plaintiff perform duties not included within his job restrictions, and plaintiff's refusal to do so, is not accepted as credible.
9. On 12 March 1992, Dr. Markey released plaintiff to return to work at full duty, except that he restricted plaintiff from performing work which would require him to wear a head band or helmet around the area of the head injury. Defendant did not provide plaintiff with work which was suitable to plaintiff's resulting capacity from 13 March 1992 until 27 March 1992.
10. Plaintiff received compensation equal to his full salary for the entire period from 18 February 1992 through 24 March 1992, which was characterized by the parties in the Stipulations as temporary total disability compensation.
11. From 27 March 1992 through 3 June 1992, plaintiff again returned to work for defendant-employer at light duty, during which period he earned less wages than he was earning at the time of the 17 February 1992 injury by accident but for which he was compensated for his diminution in wage earning capacity by payment of temporary partial disability compensation.
12. From 2 April 1992 through 29 April 1992, plaintiff was treated by Dr. Markey for increasing pain, swelling and drainage of the scar which was a result of the incident of 17 February 1992, and for which he referred plaintiff to Dr. Paul Watterson, a plastic surgeon.
13. On 13 May 1992, Dr. Paul Watterson surgically excised plaintiff's scar, raised the flaps on either side of the scar and closed the scar in layers.
14. On 3 June 1992, Dr. Watterson released plaintiff to return to work for defendant at full duty.
15. Plaintiff reached the end of the healing period from injuries sustained as a result of the 17 February 1992 incident and surgery necessitated thereby on 3 June 1992, at which time he retained no permanent partial impairment.
16. From 4 June 1992 until 3 January 1993, plaintiff resumed his regular duties as a welder for defendant employer, but he did not resume truck driving for defendant-employer. Although plaintiff testified that, during this period, he continued to suffer from head pain and swelling associated with the injury sustained on 17 February 1992 and the surgery necessitated thereby, which complaints were aggravated by the pressure of plaintiff's protective helmet, he was able to perform his required duties and work his regular hours without incident.
17. On 19 January 1993, plaintiff voluntarily resigned from his employment with defendant-employer.
18. At the time of the hearing in this case, plaintiff was employed as a truck driver for Salem National Leasing at an average weekly wage less than that which he earned during the course of his employment with defendant-employer. There is, however, insufficient evidence of record from which to determine by its greater weight that plaintiff's wage reduction constitutes a diminution of wage earning capacity as a result of the 17 February 1992 incident and surgery necessitated thereby.
19. The credible evidence of record establishes that the treatment of plaintiff by Drs. Epps, Demas, Markey and Watterson was reasonably required to effect a cure, give relief or lessen the period of plaintiff's disability related to the incident of 17 February 1991.
20. As a result of injuries sustained on 17 February 1992 and the surgery necessitated thereby, plaintiff retains a scar over his left eye that is approximately one and a half inches long, runs down from mid-forehead height above the top corner of the left eyebrow, is very slightly discolored and which was more fully described at the evidentiary hearing, said description incorporated herein by reference.
21. Plaintiff's scar retained as a result of the 17 February 1992 incident and surgery necessitated thereby, does not mar plaintiff's appearance to such an extent that it may fairly be presumed to cause plaintiff a diminution of his future wage earning capacity. Consequently, the scarring does not constitute serious facial or head disfigurement.
22. On 27 August 1992, plaintiff reported to Dr. Eugene E. Benjamin with complaints of blurred vision, which condition Dr. Benjamin diagnosed as mild simple myopia. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's myopia is related to his 17 February 1992 compensable injury.
23. On 17 February 1992, plaintiff's average weekly wage was $522.27, yielding a compensation rate of $348.18.
24. As a result of his 17 February 1992 injury by accident, plaintiff was unable to earn any wages in any employment from 18 February 1992 through 1 March 1992, and from 13 March 1992 through 23 March 1992, and was unable to earn the same or greater wages that he was earning on 17 February 1992 from 27 March 1992 through 3 June 1992. Although plaintiff's capacity resulting from the 17 February 1992 incident was diminished from 2 March 1992 through 10 March 1992, to the extent that he was restricted to performing light duty work, plaintiff has been fully compensated for his diminished physical capacity and wage earning incapacity during this period of time resulting from the 17 February 1992 incident, inasmuch as he was paid wages equal to or exceeding his wages on 17 February 1992 or what was characterized in the parties' Stipulations as temporary total disability compensation.
25. On 11 and 12 March 1992, light duty work was available with defendant employer which plaintiff was suitable to plaintiff's resulting capacity, and plaintiff's refusal to accept such employment was not justified.
* * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 17 February 1992, plaintiff's average weekly wage was $522.27, yielding a compensation rate of $348.18.
2. On 11 and 12 March 1992, plaintiff refused light duty work offered by defendant-employer which was suitable to his capacity; consequently, plaintiff is not entitled to receive compensation for those dates. N.C. Gen. Stat. § 97-32.
3. On 17 February 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in a concussion, post traumatic vertigo, head pain, mild internal derangement at the left temporomandibular joint and a scar which ultimately required surgical excision, and as a result thereof was temporarily totally disabled from 18 February 1992 through 1 March 1992, and from 13 March 1992 through 23 March 1992, entitling him to compensation at the rate of $348.18 for the aforementioned periods, subject to a credit to defendants for any temporary total disability compensation paid heretofore; and was temporarily partially disabled from 2 March 1992 through 10 March 1992, which disability is not reflected by his earnings during that period, inasmuch as plaintiff was paid wages equal to or exceeding his wages on 17 February 1992, characterized in the parties' Stipulations as temporary total disability compensation, and from 27 March 1992 through 3 June 1992 for which he is entitled to compensation at the rate of two thirds (2/3) of the difference between his average weekly wage on the date of disablement and his earnings during the aforementioned period, subject to a credit to defendants for any temporary partial disability compensation paid heretofore. Inasmuch as the parties stipulated that plaintiff received temporary total disability compensation for all periods encompassed hereinabove, plaintiff is entitled to no further compensation for temporary total disability or temporary partial disability and defendants are entitled to a credit for two (2) days of overpayment of temporary total disability. N.C. Gen. Stat. § 97-2(6); 97-29; 97-30.
4. Inasmuch as plaintiff has retained no permanent partial impairment as a result of his 17 February 1992 injury by accident, he is entitled to no compensation therefor. N.C. Gen. Stat. § 97-31et seq.
5. Plaintiff is entitled to have paid by defendants all medical compensation incurred as a result of his injury by accident of 17 February 1992. N.C. Gen. Stat. § 97-25.
6. Inasmuch as plaintiff's scarring does not constitute serious head or facial disfigurement, plaintiff is not entitled to compensation therefor. N.C. Gen. Stat. § 97-31(21).
7. Inasmuch as plaintiff's myopia is unrelated to the injury by accident of 17 February 1992, plaintiff is not entitled to receive medical compensation therefor. N.C. Gen. Stat. § 97-2(19); 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff is entitled to receive from defendants, on account of his temporary total disability, compensation at the rate of $348.18 per week from 18 February 1992 through 1 March 1992, and from 13 March 1992 through 23 March 1992; and plaintiff is entitled to receive from defendants, on account of his temporary partial disability, compensation at the rate of two thirds (2/3) of the difference between his average weekly wage on the date of disablement as a result of the injury by accident giving rise hereto and his earnings from 2 March 1992 through 10 March 1992, and from 27 March 1992 through 3 June 1992. Inasmuch as defendants have previously paid plaintiff all compensation to which he is entitled on account of his temporary total disability and temporary partial disability resulting from the injury by accident giving rise hereto, his claim for further compensation is DENIED.
2. Plaintiff's claim for permanent partial disability compensation subsequent to 3 June 1992 must be, and the same is, DENIED.
3. Defendants shall pay all medical compensation incurred as a result of the injury by accident giving rise hereto, to the extent the same are reasonably required to effect a cure, give relief or lessen the period of disability from his 17 February 1992 injury by accident and resulting surgery.
4. Plaintiff's claim for serious bodily disfigurement must be, and the same is, DENIED.
5. Defendants shall pay the costs of the hearing before the Deputy Commissioner and each side shall bears its own costs for the hearing before the Full Commission.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________________ COY M. VANCE COMMISSIONER
S/ ________________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER